UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STRAND ANALYTICAL | ) | |
| LABORATORIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:13-cv-00645-LJM-DKL |
| v. | ) | |
| | ) | |
| KATHLEEN SEBELIUS, in her official | ) | |
| capacity as SECRETARY OF HEALTH AND | ) | |
| HUMAN SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## SECRETARY'S REPLY BRIEF IN SUPPORT
## OF HER CROSS-MOTION FOR SUMMARY JUDGMENT

After considering the evidence Strand offered, including testimony from expert witnesses, medical journal articles, and letters of support from physicians, the Secretary of Health and Human Services ("the Secretary") concluded that Strand's Know Error® DNA Specimen Provenance Assay or "DSPA" tests, which match the DNA on a cheek swab with the DNA in a biopsy sample, were "very useful as a tool for avoiding error and misidentification of a patient with cancer," but "were not for the diagnosis, prevention, or treatment of a disease or assessment of a medical condition[.]" (Administrative Record ("AR") at 11, 17.) This determination is supported by substantial evidence in the record and compels a conclusion that Strand's DSPA tests are not covered by Medicare pursuant to 42 U.S.C. § 1395y(a)(1)(A). Consequently, this Court should affirm the Secretary's decision.

Furthermore, the Court should decline to accept Strand's invitation to disregard the deferential standard of judicial review that applies in a technical field like Medicare by substituting its judgment for that of the Secretary, reversing the Secretary's final decision, and reinstating the decision of Administrative Law Judge ("ALJ") that the Secretary reversed. Strand argues that reversal is warranted because "no evidence" supports the Secretary's findings and, in addition, the Secretary

1

committed various legal and procedural errors.  However, while the Secretary did not draw from the evidence the conclusions Strand prefers, the record shows she did consider the record, including the evidence that Strand contends is favorable to its position.  Moreover, Strand's assertions of legal error are belied by the statutory and regulatory scheme and by court rulings that support the Secretary's position.  Thus, the Court should deny Strand's motion for summary judgment and affirm the Secretary's determination that Strand's DSPA test is not covered by Medicare because it does not meet the statutory definition of "reasonable and necessary for the diagnosis or treatment of illness[.]" *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1395y(a)(1)(A); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984).

**I.     THE SECRETARY'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Where substantial evidence supports the Secretary's factual findings, the possibility that other conclusions may also be drawn from the evidence is legally irrelevant.  *See* 42 U.S.C. § 405(g) ("The findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive[.]").  Moreover, the scope of judicial review of a decision that was "made within the context of an extremely technical and complex field" is bounded by the recognition that "Congress delegated these difficult decisions to agencies that have developed specialized knowledge."  *Wilkins v. Sullivan*, 889 F.2d 135, 140 (7th Cir. 1989); *see also Wood v. Thompson*, 246 F.3d 1026, 1029 n.2 (7th Cir. 2001) (rejecting the plaintiff's urging to conduct a *de novo* review of the agency's decision).

Strand boldly asserts that "there is no evidence—let alone substantial evidence—that supports [the Secretary's] decision" that its DSPA test does not diagnose or treat prostate cancer.  (Dkt. at 49, at 9.)  It contends that the Secretary's decision is not based on substantial evidence because it focuses on isolated "snippets" of the record and ignores extensive record evidence supporting Strand's position.  (Dkt. No. 49, at 4-10.)  On this basis, Strand urges this Court to overturn the Secretary's

decision, citing in support a magistrate judge's criticisms of another agency decision.[1]  (*See id.* at 8-

10, discussing *Precision Therapeutics, Inc. v. Sebelius*, No. 09-451, 2010 WL 3924323 (W.D. Pa.

June 25, 2010) (report and recommendation), *adopted by* 2010 WL 3885235 (W.D. Pa. Sept. 28,

2010).)  Yet, *Precision Therapeutics* offers limited support for Strand's position that reversal is

warranted since, as the district court noted, it stands for the limited proposition that an agency's

failure to consider extensive contrary evidence may warrant remand:

> the [magistrate judge's] Report and Recommendation neither substitutes the court's
> judgment for the [Secretary's] judgment, nor recommends *reversal* of an agency
> decision.  To the contrary, the Report simply concludes that, under the appropriate
> [substantial evidence] standard of review, the court must *remand* to the [Secretary] for
> further consideration and elucidation, due to [her] failure to reflect or address
> apparently probative contrary evidence of patient benefits and reliance on
> unsubstantiated assumptions.

*Precision Therapeutics, Inc.*, 2010 WL 3885235, at *1 (emphasis in original).  Thus, even if the

Secretary had ignored a vast swath of evidence—which she did not—Strand would likely not be

entitled to the relief it seeks, namely for this Court to "reverse and vacate the Secretary's decision,

and reinstate the ALJ's determination that DSPA testing is used in the diagnosis and treatment of a

patient's prostate cancer, and thus, is a covered benefit."  (Dkt. No. 49, at 9-10.)

    Despite Strand's heavy reliance on *Precision Therapeutics* to bolster its argument that the

Secretary's decision is unsupported by substantial evidence, the case provides little guidance on that

issue.  *Precision Therapeutics, Inc.*, 2010 WL 3885235, at *2 ("There is no finding that the

[Secretary's] decisions are not supported by substantial evidence; rather, the finding is that this court

is unable to conduct a meaningful review of the [Secretary's] decisions.").  More instructive is a

recent Ninth Circuit reversal in a Medicare Part B case where the district court had found unsupported

---

[1] In the case Strand cites, the court was reviewing an ALJ decision that was deemed the final decision
of the agency because it was not selected for review by the Medicare Appeals Council.  *Precision
Therapeutics, Inc. v. Sebelius*, No. 09-451, 2010 WL 3924323, at *2 (W.D. Pa. June 25, 2010) (report
and recommendation); *see* 42 C.F.R. § 405.1048.  However, in this case, the Medicare Appeals
Council decision is the final decision of the agency.  42 C.F.R. § 405.1130.

by substantial evidence the Secretary's decision to deny coverage for an item because it was not "reasonable and necessary."  *See Int'l Rehabilitative Scis., Inc. v. Sebelius*, 688 F.3d 994 (9th Cir. 2012), *rev'g* 737 F. Supp. 2d 1281 (W.D. Wash. 2010).  As a preliminary matter, the Ninth Circuit found it was inappropriate for the district court to have considered whether the ALJ decision, which had been reversed by the Secretary, was "'more based on substantial evidence'" than the Secretary's decision.  *Int'l Rehabilitative Scis., Inc.,* 688 F.3d at 1002 (quoting 737 F. Supp. 2d at 1291, 1293). The Ninth Circuit cautioned that the substantial evidence standard of review "does not give the district court license to compare the agency decision on direct review with other agency decisions not on review and determine which is supported by more substantial evidence.  That would be tantamount to de novo review, which is not the standard."  *Id.* (citations omitted).  Here, similarly, Strand twists the issue before the Court into one requiring a *de novo* review when it urges reinstatement of the ALJ decision and asserts error based on its perspective that the record is "replete with evidence that physicians used DSPA testing to direct treatment options."  (Dkt. No. 49, at 5, 9-10).  The question before this Court is not whether the record might support Strand's position; rather, it is whether substantial evidence supports the Secretary's final decision of February 15, 2013.

The Ninth Circuit's opinion provides guidance on the contours of the well-established rule that while a court "must be more than an uncritical rubber stamp," it "must affirm the Secretary's decision if it is supported by substantial evidence."  *McNeil v. Califano*, 614 F.2d 142, 146 (7th Cir. 1980). For example, the Ninth Circuit reversed the district court's finding that the Secretary improperly discounted studies purporting to show the effectiveness of the equipment.  *Int'l Rehabilitative Scis., Inc.*, 688 F.3d at 1003.  The Ninth Circuit determined that the Secretary had "provided adequate reasons for discounting the studies" and quoted the Fourth Circuit's observation that: "'It is not our office to tender an independent judgment on the value and validity of the various scientific studies submitted. We ask only whether the Secretary's assessment was a reasonable one[.]'"  *Rehabilitative*

4

*Scis., Inc.*, 688 F.3d at 1003*. (citing *Almy v. Sebelius*, 679 F.3d 297, 305-06 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 841 (2013)).  Similarly, the court reversed the district court's conclusion that coverage by other insurers showed the device was generally accepted, and observed that "[c]onsistent with those standards [in guidance manuals], the Medicare Appeals Council reasonably concluded that neither research studies nor expert medical consensus established the medical community's general acceptance" of the device.  *Rehabilitative Scis., Inc.*, 688 F.3d at 1003.  Thus, the case confirms that a reviewing court must affirm where the Secretary reviewed the evidence in the record and reached reasonable conclusions, regardless of whether other conclusions are possible.

Here, the Secretary reasonably concluded from the record that Strand's DSPA test is a DNA-matching test wherein a cheek swab is used "to verify that the [biopsy] specimen used to diagnose the beneficiary originated with the identified beneficiary[,]" and that it does not diagnose or treat prostate cancer, but rather is used "to prevent laboratory identification error." (AR 00017, 00020.)  In her opening brief, the Secretary explained how her decision was supported by the record.  (*See generally* Dkt. No. 43, at 16-22.)  Furthermore, on its face, the Secretary's decision refutes Strand's assertion that evidence allegedly supporting its position was ignored or improperly discounted.  (AR 00004-20.)  For example, the Secretary reviewed the ALJ decision and acknowledged that the ALJ was persuaded by Strand's expert testimony and that he agreed generally with Strand's argument.  (*See* AR 00006.)  She explicitly addressed Strand's argument, which it reasserts here, "that the testimony of its medical experts, written submission from treating physicians, and medical articles support that DSPA is used to aid in the treatment of cancer and is thus medically reasonable and necessary."  (AR 00012.)  And, she set forth her analysis of Strand's evidence, including physician letters of support, medical journal articles, and the testimony of Strand's witnesses.  (*See* AR 00012-17.)

The Secretary did not ignore evidence as Strand suggests; she simply drew inferences and conclusions from that evidence that were contrary to those Strand urged her to draw.  Indeed, the

Secretary's analysis shows that she considered the very evidence Strand contends she ignored, including the testimony of Dr. Kapoor and Dr. Pfeifer and letters from treating physicians. (*Compare* AR 00012-17, *with* Dkt. No. 49, at 5-8.) For example, before finding that Strand had "not established that DSPA testing is covered [by Medicare] based on testimony and the written submission of other physicians[,]" the Secretary summarized five physician letters, recognizing that the authors attested to the "usefulness of the testing[,]" and quoted testimony from both Dr. Pfeifer and Dr. Kapoor regarding the confirmatory (rather than diagnostic) function of the DSPA test. (AR 00013-14) Similarly, prior to finding that Strand's DSPA testing does not diagnose illness or injury but rather "confirms the identity of the individual who has already been diagnosed through other (generally Medicare-covered) diagnostic testing[,]" the Secretary devoted two single-spaced pages to analyzing the five published articles in evidence. (AR 00014-16.) She declined to rely on two unpublished articles, both of which were authored by Dr. Pfeifer who testified before the ALJ,[2] and recognized that "[t]he articles in evidence each present the problem of misdiagnosis and offer DSPA testing as a useful tool to prevent laboratory error[.]" (AR 00015-16.) Strand's arguments conflate the factual evidence in the record with the reasonable conclusions that may be drawn therefrom; Strand may disagree with the conclusions the Secretary drew, but that does not mean that substantial evidence does not support those findings, nor does it mean—as Strand contends—that the Secretary disregarded contrary evidence in reaching the determinations.

## II. THE SECRETARY'S DECISION IS FREE OF LEGAL ERROR.

The Secretary rendered her decision that Strand's DSPA test is ineligible for Medicare reimbursement in accordance with Medicare law and procedures. (*See* AR 00004-20.) She concluded that Strand's DSPA test is not "reasonable and necessary for the diagnosis or treatment of illness or

---

[2] The articles were: (1) John D. Pfeifer, M.D., PhD., et al., *Development of a Decision-Analytic Model for the Application of STR-based Provenance Testing of Transrectal Prostate Biopsy Specimens* (unpublished), at AR 00284-311, 311A-E; and (2) John D. Pfeifer & Jingxia Liu, *Rate of Occult Provenance Complications in Routine Clinical Practice* (unpublished and undated), at AR 000224-44.

injury" as it is defined under the Medicare Act.  *See* 42 U.S.C. § 1395y(a)(1)(A); AR 00017, 00020.

Similarly, she concluded that the test does not qualify as a "diagnostic laboratory test" entitled to

Medicare reimbursement because the evidence did not establish that Strand's DSPA test diagnoses or

treats prostate cancer.  *See* 42 U.S.C. § 1395x(s)(3); 42 C.F.R. § 410.32; AR 00017, 00020.  Strand,

however, asserts that the Secretary applied the wrong legal standards and that "[u]nder the plain

language of the Medicare statute and regulations, DSPA testing is a reasonable and necessary

diagnostic laboratory test, and thus should be reimbursable pursuant to Medicare Part B."  (Dkt. No.

49, at 16, 17.)  However, the Secretary's interpretation of what is "reasonable and necessary" under

the Medicare Act is entitled to *Chevron* deference.[3]  Moreover, Strand's arguments fail to show the

Secretary applied any improper legal standard and—where the factual findings are supported by

substantial evidence—the Secretary's conclusions must, as a matter of law, be affirmed.

## A.     The Secretary's Discussion Of The Non-Diagnostic DNA Matching Function Of The DSPA Test Is Not An Argument About CLIA Regulatory Compliance.

Whether Strand's DSPA test complies with the Clinical Laboratory Improvement

Amendments of 1988 ("CLIA"), 42 U.S.C. § 263a, is not before this Court.  In her decision, the

Secretary found it unnecessary to address "whether DSPA is a quality assurance test under CLIA,"

because she determined that the test was not covered by Medicare as it is not reasonable and

necessary for the diagnosis or treatment of illness or injury.  (*See* AR 00018.)  Accordingly, in her

opening brief before this Court, the Secretary did not discuss or cite the statute or any of the CLIA

regulatory provisions at 42 C.F.R. Part 493.  Nevertheless, Strand devotes five pages of its reply brief

to debunking the Secretary's supposed assertion of a CLIA argument.  (*See* Dkt. No. 49, at 10-15.)

Strand's argument reduces to one of semantics, centering on the Secretary's use of the terms

---

[3] *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984). *E.g.*, *Wilkins v. Sullivan*, 889 F.2d 135, 139 n.7 (7th Cir. 1989) (deferring to the agency's interpretation of whether a specific type of surgery was "reasonable and necessary" because "Congress has not spoken directly or explicitly on the issue").

"quality assurance" and "quality control" in her opening brief.  In part, Strand asserts that the

following statements by the Secretary demonstrate an improper reassertion of a CLIA argument:

> [T]here is substantial evidence in the record to support a finding that Strand's
> DSPA test serves a "quality control" and not a diagnostic function, including
> statements by Strand's pathology expert witness, Dr. Pfeifer.
>
> . . . .
>
> In fact, [Dr. Pfeifer] distinguishes "[s]everal *diagnostic* uses of STR-based
> identity testing[,]" including "assessment of maternal cell contamination in prenatal
> specimens," from the *quality-control use* of Strand's DSPA test at issue here, which is
> used "in the resolution of specimen labeling/identification issues . . . and extraneous
> tissue contaminant issues . . . ."  (AR 00787 (emphasis added).)

(Dkt. No. 43, at 18.)   Context reveals that the Secretary's use of the term "quality control" was not

related to CLIA; rather, it was used to describe the confirmatory DNA-matching function of the

DSPA test, which is clarified a few pages later when the Secretary states:

> Strand's DSPA test does not test for PSA levels or provide histopathologic analysis of
> the core biopsy samples; it provides quality assurance for the biopsy results by testing
> whether there is a match between the DNA in the biopsy and cheek swab samples.
> Thus, as the Secretary found, the test is not used to direct treatment options, nor is it
> diagnostic.  (AR 00017.)

(Dkt. No. 43, at 20.)  This is consistent with the position of the Secretary in her decision where she

found that Strand's DSPA tests are not for the diagnosis or treatment of prostate cancer, "but to

prevent laboratory identification error[]" (AR 00020), and are "used in conjunction with subjective

histopathology (*e.g.* the initial diagnostic test) to *confirm* that the specimen is indeed that of the

beneficiary tested[]" (AR 00016-17, emphasis in original).  Moreover, Strand acknowledges that

"there is no dispute that DSPA testing serves a confirmatory role in the diagnostic testing cycle for

prostate cancer" and proclaims that "Strand has never argued otherwise."  (Dkt. No. 49, at 2.)

Strand's scuffles over word choice do not, therefore, demonstrate an improper reanimation of an

argument or undermine the substantial evidence that supports the Secretary's determination that the

DSPA test does not diagnose or treat prostate cancer and is used only "to verify that the specimen

used to diagnose the beneficiary originated with the identified beneficiary."  (AR 00017.)

## B.   The Secretary Followed Applicable Guidance In Reviewing Strand's Evidence.

Medicare manuals provide guidance to contractors on how to determine what items and

services qualify for Medicare coverage, and ALJs and the Medicare Appeals Council must give

"substantial deference" to these Medicare manuals "if they are applicable to a particular case."  42

C.F.R. § 405.1062(a).  Strand argues that the relevant provisions in the Medicare Program Integrity

Manual ("MPIM") "support the ALJ's determination that DSPA testing is medically necessary" and,

consequently, show error in the Secretary's decision on review here.  (Dkt. No. 49, at 18; *see* MPIM,

CMS Pub. No. 100-08, Ch. 13, *available at* http://www.cms.gov/Regulations-and-

Guidance/Guidance/Manuals/Internet-Only-Manuals-IOMs.html.)  As an initial matter, although it

did not assert this argument in its opening brief in support of summary judgment, Strand disputes—in

a footnote—that it abandoned this theory of relief.  (Dkt. No. 49, at 20 n.11.)  While it is axiomatic

that it is improper to raise an argument only in a reply, the Secretary does not press this issue here

where the briefing schedule here permits her an opportunity to respond to Strand's argument.  *Cf.*

*Citizens Against Ruining the Env't v. Envtl. Prot. Agency*, 535 F.3d 670, 675-76 (7th Cir. 2008).

Rather, the Secretary expands on her alternative argument, namely that Strand's position lacks merit

because the Secretary applied the correct guidance to reach her conclusion that the DSPA test does

not diagnose or treat prostate cancer.

In her decision, the Secretary discussed guidance set forth in the MPIM, including § 13.5.1,

which restates the requirement of 42 U.S.C. § 1395y(a)(1)(A) that, to be covered under Medicare, a

service must be "reasonable and necessary" and sets forth three primary considerations for such a

determination, including whether the service is "appropriate."  (AR 00009-10.)  Strand asserts that the

Secretary "makes no argument that Strand failed to satisfy these basic criteria of 'reasonable or

necessary[.]'"  (Dkt. No. 49, at 19.)  In so arguing, Strand strips out and relegates to a footnote (*id.* at

18 n.10) key language in the guidance that explains that a service is "appropriate" only if it is

9

"[f]urnished in accordance with accepted standards of medical practice for the **diagnosis or treatment** of the patient's condition or to improve the function of a malformed body member." MPIM § 13.5.1 (emphasis added).  Thus, the MPIM simply incorporates the statutory requirement that an item or service must be "reasonable and necessary for the diagnosis or treatment" to be covered by Medicare.  42 U.S.C. § 1395y(a)(1)(A); *see also* MPIM § 13.5.1 (incorporating the "reasonable and necessary" language).  Thus, where the primary focus of the Secretary's decision was whether or not the DSPA test diagnosed or treated prostate cancer, it is incorrect to suggest that the Secretary made no argument as to whether Strand met the MPIM "basic criteria."

Next, Strand asserts that the Secretary improperly followed the provisions of MPIM § 13.7.1, which provide guidance on what evidence should be considered in making a coverage determination, because it claims the provisions apply only to Local Coverage Determinations ("LCDs"), which are guidance documents a Medicare contractor issues that apply generally to a specific geographic region. (Dkt. No. 49, at 20.)  Despite acknowledging that § 13.7.1 includes a sentence referencing the evidentiary requirements for "individual consideration," Strand nevertheless argues that "the Secretary's position [that § 13.7.1 criteria apply to individual determinations] has no basis in the actual language of the MPIM."  (*Id.*)  The Fourth Circuit has rejected this exact argument.  *See Almy*, 679 F.3d at 304-05.  The Fourth Circuit recognized that "the Secretary has adopted a single set of standards that governs both LCDs and individual adjudications[,]" which it found evident because the MPIM "section on individual adjudications, § 13.3, indisputably incorporates by reference the substantive criteria applicable to LCDs in § 13.5.1, and MP[I]M § 13.7.1 does no more than explicate the type of evidence that may demonstrate a device's compliance with the conjunctive standards of § 13.5.1."  *Id.* at 305.  Accordingly, the Fourth Circuit concluded that the MPIM sections must be read together and that "[t]he Secretary has . . . made clear that the same criteria that govern LCDs should

10

also govern individual adjudications." *Id.* at 304. Following the reasoning of the Fourth Circuit, this Court should find Strand's argument without merit.

Strand also hones in on the section of MPIM § 13.7.1 that provides that "[l]ess stringent evidence is needed when allowing for individual consideration[]" and asserts that the Secretary "apparently relies" on that language to hold Strand to an erroneously high standard of proof. (Dkt. No. 49, at 21.) Yet, Strand does not cite to authority that supports its interpretation of the phrase or explain how the Secretary actually erred. Instead, it repeats its challenge to the Secretary's evaluation of the record evidence and speculates that the Secretary's disagreement with its position proves that she held it to an improper standard. (*See id.* (asserting in support that the Secretary "dismisse[d]" testimony, and "refused to rely on" and "dismisse[d]" articles)). However, as explained above, the fact that the Secretary did not agree with Strand's interpretation of the evidence does not show error. Moreover, as the Fourth Circuit has observed, it is entirely appropriate for the Secretary "to use uniform criteria in assessing Part B coverage, supported by uniform types of evidence, and . . . to have applied the requirements of MPIM § 13.7.1" to an individual determination. *Almy*, 679 F.3d at 305. Obviously, the outer limit of any flexibility on evidentiary requirements is set by the Medicare Act, which bars payment where the "items or services . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member[.]"  42 U.S.C. § 1395y(a)(1)(A).  The Secretary reviewed Strand's evidence in light of this mandate and Strand's hypotheses do not demonstrate error.

### C.    The Medicare Appeals Council Applied The Correct Standard of Review.

The Secretary has explained that the Medicare Appeals Council is statutorily required to conduct a *de novo* review and is empowered to "adopt, modify, or reverse the ALJ hearing decision" as appropriate. *See* 42 U.S.C. § 1395ff(d)(2)(B); 42 C.F.R. §§ 405.1100(c); 405.1128(b). Strand states that although it "does not question that the [Medicare] Appeals Council's review is *de novo*,"

the Secretary nevertheless could not "re-examine[] the evidence in addition to considering whether the ALJ's decision contained material errors of law." (Dkt. No. 49, at 23, 25.) Its argument prioritizes 42 C.F.R. § 405.1110(c) over 42 C.F.R. § 405.1100(c) and, consequently, fails to appreciate the varying standards of review that apply during the administrative review process.

When Congress passed the Medicare, Medicaid and SCHIP Benefits Improvement and Protection Act of 2000 ("BIPA"), it included significant amendments to the Medicare appeals process at 42 U.S.C. § 1395ff. *See* Pub. L. No. 106–554, § 521, 114 Stat. 2763 (2000) (amending § 1869 of the Medicare Act). Major changes included adding a level of review, reducing time frames for appeal decisions, and changing the standard of review to provide that, when reviewing an ALJ decision, the Medicare Appeals Council "shall review the case de novo." 42 U.S.C. § 1395ff(d)(2)(B); *see Medicare Program: Changes to the Medicare Claims Appeal Procedures*, 67 Fed. Reg. 69,312, 69,313 (Nov. 15, 2002) (proposed rule). Congress did not specify a different standard of review depending on whether the Medicare Appeals Council reviewed the ALJ decision as a result of a request by a party or on its own motion; consequently, CMS did not—and could not—modify the *de novo* standard of review when it promulgated implementing regulations. *E.g.*, *Medicare Program: Changes to the Medicare Claims Appeal Procedures*, 74 Fed. Reg. 65,296, 65,328 (Dec. 9, 2009) (final rule) ("The *de novo* standard of review that is applicable at the MAC [Medicare Appeals Council] level is statutorily required by section 1869(d)(2)(B) of the Act, as added by BIPA. Thus, the MAC may not review ALJ decisions under a substantial evidence standard as it had under previous rules, nor may it utilize a preponderance of evidence standard to adjudicate appeals.").

Strand asserts that the Secretary's interpretation of the regulations, namely that 42 C.F.R. § 405.1110(c) applies only when the Medicare Appeals Council is deciding whether to accept review and a *de novo* standard of review applies once it accepts review, "is untenable[.]" (Dkt. No. 49, at 23.) Yet, reading 42 C.F.R. § 405.1110(c) to be limited in this way is the <u>only</u> way harmonize the

regulation with the statutory requirement for a *de novo* review of cases under 42 U.S.C.

§ 1395ff(d)(2)(B).[4]   The regulation at 42 C.F.R. § 405.1110(c) thereby limits the number of cases the

Medicare Appeals Council accepts for own motion review and preserves scarce resources by acting to

provide finality in a case where the sole issue is the weight of the evidence or the sufficiency of the

factual record.  *See* 67 Fed. Reg. at 69,316 ("In developing the . . . proposals, we have carefully

considered how best to achieve these goals within the BIPA construct, keeping in mind the limited

resources likely available for appeals system changes. We are also acutely aware of the possibility

that the volume of appeals could increase significantly with the implementation of BIPA."); *id.* at

69,334-35 (discussing how BIPA's "changes in the standard of review and the adjudication deadlines

will require . . . changes to the MAC's current procedures" and outlining regulatory changes,

including at 42 C.F.R. § 405.1100).  Thus, the Secretary's interpretation is not "untenable" as Strand

contends, but rather reflects a reasonable policy decision to implement new statutory requirements.

Finally, Strand faults the Secretary for citing in support "only to an unreported case from the

Eastern District of Arkansas."  (Dkt. No. 49, at 23 n.14.)  As an initial matter, while the Secretary did

indeed cite to only one unpublished case, she also cited to 42 U.S.C. § 1395ff, its implementing

regulations, and notices in the Federal Register.  (*See* Dkt. No. 43, at 24-27.)  Moreover, the

unpublished case was directly on point since the court considered the argument Strand raises here and

agreed with the Secretary that the limitation in 42 C.F.R. § 405.1110(c)(2) "applies only to the

[Medicare Appeal Council's] determination of whether to review an ALJ decision, not to [its]

---

[4] Albeit in different contexts, at least two Circuit Courts of Appeals have concluded—based on the wording of 42 U.S.C. § 1395ff(d)(2)(B)—that the standard of review before the Medicare Appeals Council is *de novo*.  *See John Balko & Assocs., Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, No. 13–1568, ___ F. App'x ___, 2014 WL 542262, at *5 (3d Cir. Feb. 12, 2014) (observing that "even if the ALJ had made credibility findings, [the Medicare Appeals Council] justifiably could have reached a different conclusion under its mandate to apply *de novo* review"); *Almy v. Sebelius*, 679 F.3d 297, 310 (4th Cir. 2012) (noting that the Medicare Appeals Council or MAC "is explicitly charged with undertaking *de novo* review . . . which is incompatible with [the plaintiff's] proffered notion that the MAC is somehow obligated to defer to the outcomes of prior decisions below"), *cert. denied*, 133 S. Ct. 841 (2013).

standard of review once that determination has been made." *See Doctors Testing Ctr., LLC II v. U.S. Dep't of Health & Human Servs.*, No. 4:11-cv-00857 KGB, 2014 WL 112119, at \*4 (E.D. Ark. Jan. 10, 2014).  And, since the Secretary filed her opening brief, a magistrate judge in the Southern District of Ohio has also considered the interplay of 42 C.F.R. § 405.1100(c) and § 405.1110(c), and—like the district court in the Eastern District of Arkansas—has validated the Secretary's interpretation.  *See Chillicothe Chiropractic & Wellness Ctr. v. Sibelius* [sic], No. 2:12-cv-330, 2014 WL 1382478, at \*\*6-7 (S.D. Ohio Apr. 8, 2014) (report and recommendation) (ruling pending on plaintiff's objection, filed May 2, 2014).  Specifically, the magistrate judge distinguished the standard of review the Medicare Appeals Council applies "[w]hen deciding whether to accept review[,]" namely that set forth at 42 C.F.R. § 405.1110(c), from the *de novo* review the Medicare Appeals Council applies pursuant to 42 C.F.R. § 405.1100(c) once it "accepts a case for review[.]"  *Id.* at \*6.  This Court should similarly find that the required standard of review is *de novo* and, therefore, conclude that the Medicare Appeals Council did not exceed the applicable standard of review.

### D.    The Secretary Appropriately Ruled On The Admissibility Of Evidence.

As part of a footnote, Strand alludes to its earlier argument that it was improper for the Secretary to accept into the record two exhibits offered by CMS.  (*See* Dkt. No. 49, at 24-25 n.15; *see also* Dkt. No. 39, at 24 n.13.)  Its argument is speculative and fails to show reversible error.  As a preliminary matter, although Strand hypothesizes that CMS's position means it could supplement the record without giving the provider an opportunity to respond (Dkt. No. 49, at 24 n.15), this issue is not presented here because Strand had an opportunity to respond to CMS's evidence during the briefing before the Medicare Appeals Council, an opportunity of which it availed itself.  (*See* AR 00046-50).  Moreover, the Secretary found CMS's documents to be of "limited probative value" and did not cite or discuss them in her substantive analysis of Strand's evidence.  (*Compare* AR 00007-08 (discussing the admissibility of CMS's evidence), *with* AR 00012-17 (discussing whether Strand's

14

evidence shows the DSPA test is covered by Medicare).  In any event, the regulations do not prohibit the admission of CMS's evidence.  *See* AR 00008 n.5 (citing 42 C.F.R. §§ 405.1110, 405.1122).  *Compare* 42 C.F.R. § 405.1110(b)(2) (regulations on referral for own motion review without reference to evidence that may be considered), *with* 42 C.F.R. § 405.1122(a) (restricting evidence in cases where a party has submitted a "request for review"), *and* 42 C.F.R. § 405.1122(c) (restricting new evidence submitted "by a provider, supplier, or a beneficiary").

### E.    A Full And Fair Reading Of The Secretary's Decision Shows She Applied The Correct Standard In Strand's Case.

In its opening brief, Strand asserted that the Secretary's imposition of a heightened standard is proven by her choice of certain words in her decision.  (Dkt. No. 39, at 24-25.)  In response, the Secretary explained that a full and fair reading of her decision demonstrates that she applied the correct statutory standard.  (Dkt. No. 43, at 27-29.)  Instead of addressing the Secretary's argument, Strand now asserts that the alleged "heightened standard is evident throughout the Secretary's brief" because of the use of the term "therapeutic," which Strand proclaims is "nowhere to be found" in 42 U.S.C. § 1395y. (Dkt. No. 49, at 26.)

Strand's argument is without merit.  The term "therapeutic" appears three times in the Secretary's 30-page brief, which focuses on whether Strand's DSPA test meets the regulatory and statutory requirements of Medicare.[5]  According to the Merriam-Webster Dictionary, "therapeutic" means "of or relating to the **treatment** of disease or disorders by remedial agents or methods <a

---

[5] Those three instances are:

- "However, substantial evidence supports the Secretary's conclusion that Strand's DSPA test, while a 'very useful tool for avoiding error and misidentification of a patient with cancer,' is neither diagnostic nor therapeutic." (Dkt. No. 43, at 15.)
- "Even though Strand contends only one possible conclusion can be drawn from the evidence it submitted, after review of the full record, the Secretary disagreed and concluded that the test is neither diagnostic nor therapeutic in nature."  (*Id.* at 20.)
- "Because the Medicare Appeals Council found no diagnostic or therapeutic function for Strand's DSPA test (*see* § V(A), *supra*), the test does not—as a matter of law—qualify as a 'diagnostic laboratory test' entitled to Medicare reimbursement."  (*Id.* at 22.)

*therapeutic* rather than a diagnostic specialty>[.]"  *Merriam-Webster Dictionary* (2014),

http://www.merriam-webster.com/dictionary/therapeutic (bold emphasis added, italics in original).

The Medicare Act bars payment for services that are "not reasonable and necessary for the diagnosis

or **treatment** of illness or injury[.]"  42 U.S.C. § 1395y(a)(1)(A) (emphasis added).  Thus, the use of

the adjective "therapeutic" is consistent with Congress's use of the noun "treatment."  Strand's

argument that a simple grammatical variance in language shows that the Secretary held Strand to a

heightened standard should be summarily rejected, as should its argument that a heightened standard

is shown by a typographical error and the Secretary's use of the word "directly" on page 13 of her

decision.  Rather, a full and fair reading of the Secretary's decision and brief demonstrate that the

standard by which coverage for Strand's DSPA test was reviewed is the standard set forth in the

Medicare Act.

### III.   CLARIFICATION OF SCOPE OF REVIEW

#### A.   The Secretary's Determinations Are Entitled To Deference On Review.

In a footnote, Strand disputes the Secretary's proposed "substantial evidence" and "legal

error" standard of review and instead reasserts the "arbitrary and capricious" standard of the

Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), as it proposed in its opening brief.  (Dkt.

No. 49, at 15 n.8.)  The statutory scheme supports the Secretary's position that 42 U.S.C. § 405(g)

sets the applicable standard of review.  *Compare* 42 U.S.C. § 1395ff(b)(1)(A) (judicial review of

coverage determinations under Medicare Parts A and B is pursuant only to 42 U.S.C. § 405), *with* 42

U.S.C. § 1395*oo*(f)(1) (judicial review for Provider Reimbursement Review Board appeals is

conducted under "chapter 7 of Title 5," which is the APA).  Numerous courts that have explicitly

considered this issue also agree that 42 U.S.C. § 405 controls.[6]  And, the Seventh Circuit has applied

---

[6] *E.g., Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000) (per curiam) (holding that, for Medicare claim determination cases, "[t]he § 405(g) standard controls"); *John Balko & Assocs.,  v. Sebelius.*, No. 12cv0572, 2012 WL 6738246, at **3-5 (W.D. Pa. Dec. 28, 2012), *aff'd on the merits*,

a "substantial evidence" and "legal error" standard of review in a Medicare Part B case.[7]  *See Wood*, 246 F.3d at 1029.  Nevertheless, as the Secretary noted in her opening brief (Dkt. No. 43, at 23-24), this distinction likely makes little practical difference to the outcome of this case, since "[u]nder both the 'arbitrary and capricious' and 'substantial evidence' standards, the scope of review is narrow and a court must not substitute its judgment for that of the agency."  *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012).

> **B.**     **Strand Did Not Appeal The Secretary's Financial Liability Determination, Which Is Now Binding Upon A Finding That Medicare Does Not Cover the DSPA Tests.**

The Secretary explained that Strand "does not challenge [her adverse] financial liability determination in its complaint or its motion for summary judgment, arguing only that Strand's DSPA test is covered by Medicare."  (Dkt. No. 43, at 15.)  Strand takes issue with this—in a footnote—and suggests that it has appealed the Secretary's liability determination to the extent it "appealed the overarching issue that DSPA testing is medically reasonable and necessary, and thus, a covered benefit under Medicare."  (Dkt. No. 49, at 8 n.4.)  Strand's attempt to camouflage the import of its omission on the scope of this Court's review is unpersuasive.

Under the Medicare Act, the determination of whether Medicare refuses to pay for an item or service is a two-step process.  Initially, Medicare reviews whether an item or service is "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member[.]"  42 U.S.C. § 1395y(a)(1)(A).  Even if Medicare determines that an item or service is not reasonable and necessary, Medicare may nevertheless pay if the beneficiary and the

---

2014 WL 542262 (3d Cir. Feb. 12, 2014); *United Med. Healthcare, Inc. v. Dep't of Health & Human Servs.*, 889 F. Supp. 2d 832, 839-40 (E.D. La. 2012); *Diapulse Corp. of Am. v. Sebelius*, No. 06-CV-2226DLI, 2010 WL 1037250, at **5-6 (E.D.N.Y. Jan. 21, 2010) (report and recommendation)*, adopted by* 2010 WL 1752571 (E.D.N.Y. Mar. 17, 2010); *Yale-New Haven Hosp., Inc. v. Thompson*, 198 F. Supp. 2d 183, 184 & n.1 (D. Conn. 2002), *aff'd*, 470 F.3d 71, 78 (2d Cir. 2006).

[7] *But see Wilkins*, 889 F.2d at 139 (assuming without explanation that the APA standard of review was "made applicable to the Secretary's Medicare [coverage] determinations by § 42 U.S.C. § 1395oo(f)(1)," which by its own terms applies only to determinations relating to cost reports that are appealable to the Provider Reimbursement Review Board).

provider or supplier "did not know, and could not reasonably have been expected to know, that payment would not be made for such items or services[.]"  42 U.S.C. § 1395pp(a).  Thus, the issue of financial liability is legally distinct from the issue of whether the item or service is reasonable and necessary to diagnose or treat an illness or injury.  *See, e.g.*, *Int'l Rehabilitative Scis., Inc.*, 688 F.3d at 1004 (reversing the district court's conclusion that substantial evidence did not support the Secretary's "reasonable and necessary" determination and remanding for consideration of whether substantial evidence supported the Secretary's liability determination under 42 U.S.C. § 1395pp).

Here, the Secretary found that the DSPA test does not meet the definition of a diagnostic laboratory test and is not reasonable and necessary because it is not for the diagnosis or treatment of prostate cancer.  (AR 00017.)  She then found, in a separate section of the decision under the heading "LIABILITY," that Strand "could reasonably have been expected to know" that Medicare would not pay for DSPA tests because of the established coverage requirements for diagnostic laboratory testing.  (AR 00019.)  Strand has not contested this second finding as to liability; rather, it acknowledges it has appealed only the Secretary's first finding as to coverage.  Therefore, Strand has waived its opportunity for review of whether substantial evidence supports the Secretary's determination that Strand could reasonably have been expected to know that Medicare would find the DSPA test not to be reasonable and necessary for the diagnosis or treatment of prostate cancer.  Consequently, should the Court determine that substantial evidence supports the Secretary's determination that the DSPA tests are not "reasonable and necessary," Strand's liability is undisputed.

## IV.    CONCLUSION

Although Strand contends that the record before this Court inexorably shows that its DNA identification match test, or DSPA test, is covered by Medicare, the Secretary determined to the contrary.  Strand's argument that "no evidence" supports the Secretary's findings conflates the evidence with the conclusions that may be drawn therefrom to posit that the Secretary's disagreement

with the Strand's preferred conclusions show that she failed to consider certain evidence, even though the Secretary's decision shows consideration of that very evidence.  Similarly, Strand's assertions of reversible error fall flat when evaluated against the applicable statutory and regulatory provisions.

Substantial evidence, including Strand's own expert witness testimony and journal articles, supports the Secretary's determination that Strand's DSPA test does not diagnose or treat an illness or injury but rather confirms the identity of the patient for whom a diagnosis has already been made. Moreover, in reaching its conclusion that Strand's DSPA tests "do not fit within the definition of a covered laboratory service nor are they medically reasonable and necessary within Medicare's limited definition of such terms[]" (AR 00011), the Secretary's final decision employed the correct legal standards and followed appropriate procedures in evaluating evidence submitted.  Thus, this Court should grant the Secretary's motion for summary judgment.

Respectfully submitted,

JOSEPH H. HOGSETT
United States Attorney

By:   s/ Jill Z. Julian
Jill Z. Julian
Assistant United States Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Telephone:  317-229-2417
E-mail:  Jill.Julian@usdoj.gov

Of Counsel:

WILLIAM B. SCHULTZ
General Counsel

ALAN S. DORN
Chief Counsel, Region V

Deborah A. Morgan
Assistant Regional Counsel
U.S. Department of Health and Human Services
233 N. Michigan Avenue, Suite 700
Chicago, Illinois 60601

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2014, a copy of the foregoing was filed electronically through

the ECF/CM system.  Notice of this filing will be sent to the following parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system:

Andrew Brian Wachler
WACHLER & ASSOCIATES, P.C.
awachler@wachler.com

Jenny R. Buchheit
ICE MILLER LLP
jenny.buchheit@icemiller.com

Michael David Bossenbroek
WACHLER & ASSOCIATES, P.C.
mbossenbroek@wachler.com

Myra Consetta Selby
ICE MILLER LLP
myra.selby@icemiller.com

s/ Jill Z. Julian
Jill Z. Julian
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Fax: (317) 226-5027
E-mail: Jill.Julian@usdoj.gov